UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MAPLE AVENUE REPAIR SERVICE, LLC, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-1689 (JCH) |
| v. | : | |
| | : | |
| TOWN OF NORTH HAVEN, NORTH HAVEN POLICE DEPARTMENT, THOMAS MCLOUGHLIN, MARK GENOVESE, and LOUIS PETRILLO, | : | FEBRUARY 13, 2013 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 12) AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 6)**

**I.     INTRODUCTION**

On November 2, 2012, plaintiff Maple Avenue Repair Service, LLC ("Maple Avenue"), a licensed towing company, filed this action in Connecticut state court seeking a preliminary and permanent injunction, alleging violation of its constitutional rights to due process and equal protection pursuant to section 1983 of title 42 of the United States Code,[1] and alleging action beyond the Defendants' regulatory authority due to federal preemption, all stemming from the removal of Maple Avenue from the Town of North Haven's towing rotation list.  Defendants Town of North Haven, North Haven Police Department, Thomas McLoughlin, Mark Genovese, and Louis Petrillo (together "Defendants") subsequently removed the case to this court (Doc. No. 1). Maple Avenue then filed a Motion for Preliminary Injunction (Doc. No. 6).  Prior to a hearing on the Motion, the Defendants filed a Motion to Dismiss (Doc. No. 12) as to all

---

[1] Maple Avenue does not address the Motion to Dismiss as to its equal protection claim, and the court therefore deems it abandoned.  The court will not consider that claim and **grants** the Motion to Dismiss as to it.

1

counts of the Complaint (Doc. No. 1-4).  On January 9, 2013, this court held a hearing as to the merits of the Motion for Preliminary Injunction (Doc. No. 21, 22), and in that hearing indicated that counsel should simultaneously complete briefing regarding the Motion to Dismiss and the Motion for Preliminary Injunction on an expedited schedule to aid this court's decision.

For the following reasons, the court **grants** Defendants' Motion to Dismiss in its entirety.  As a result, the court **terminates as moot** Maple Avenue's Motion for Preliminary Injunction.

## II.   STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show he is entitled to relief.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'").  The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). The plausibility standard does not "require[ ] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal Court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 662 F.3d 104, 111 (2d Cir. 2010) (citations

omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id. (quotations and citations omitted).

### III.   FACTUAL BACKGROUND[2]

Maple Avenue (which does business under the name Nelcon Service Center), is a licensed towing company in Connecticut. The Town of North Haven is an unincorporated town in Connecticut, and the North Haven Police Department is a department of that town. Chief of Police Thomas McLoughlin, Captain Mark Genovese, and Officer Louis Petrillo are police officers of the Town of North Haven.

Prior to October 25, 2012, Maple Avenue was a member of the "towing rotation board" of the Town of North Haven. Compl. at ¶ 5. As a member of the towing rotation board, Maple Avenue was placed on the Town of North Haven's towing rotation list, which is comprised of companies called by the North Haven Police Department for nonconsensual tows.

In a letter from McLoughlin dated September 13, 2012, Maple Avenue was informed that an audit had been conducted by Genovese and Petrillo of the police department's Traffic Division and that the officers reported that Maple Avenue had towing invoices that appeared to be excessive. The letter also advised Maple Avenue that it would have an "opportunity to explain any questionable charges" in a meeting to be held on October 15, 2012. Compl. at ¶ 7. This meeting was not on the record, and

---

[2] The court assumes as true the facts in Maple Avenue's Complaint for purposes of this Motion to Dismiss.

4

no rules or standards applied.  Enclosed with the letter was an Interoffice Memorandum outlining the specific invoices examined by the officers and the officers' review of them.

No customer or insurance company filed a complaint with the State of Connecticut Department of Motor Vehicles regarding overcharges.  The Department of Motor Vehicles did not make a finding of overcharging on any of the invoices reviewed by Genovese and Petrillo.

At the October 15, 2012 meeting, McLoughlin and Genovese were present, along with three inspectors from the Department of Motor Vehicles.[3]  Maple Avenue submitted a memorandum outlining the justification for each service listed on every invoice.  On October 24, 2012, Maple Avenue's counsel received correspondence from McLoughlin stating that Maple Avenue had been removed from the towing rotation board effective October 25, 2012.

Maple Avenue asserts that Defendants selectively enforced the Town of North Haven's Wrecker Policy and Procedures[4] against Maple Avenue.  Maple Avenue was one of the few towing companies removed from the town's towing rotation list.  Maple Avenue was the only "heavy duty towing service" in the town.  Compl. at ¶ 11. Defendants sought to remove Maple Avenue from the towing rotation list on the basis of overcharging for services "which were not performed by a tow truck."  Compl. at ¶ 12.

---

[3] The court assumes the inspectors are from the Department of Motor Vehicles based on the context of the Complaint.  The Complaint simply states that the inspectors are from the "Department." Compl. at ¶ 9.

[4] Although not specifically stated in the Complaint, it is clear from the pleadings that the Wrecker Policy and Procedures governed the operation of the town's towing rotation board.

**IV.     DISCUSSION**

   A. Due Process Claim

The court first turns to Maple Avenue's Due Process claim.  Maple Avenue alleges that because it was not provided a proper hearing or notice for a hearing before being removed from the towing rotation list, its constitutional rights were violated.  The Defendants argue that this claim fails because Maple Avenue has failed to show it had a constitutionally protectable property interest under the Fourteenth Amendment.

In evaluating a procedural due process claim, courts "analyze (1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest."  Adams v. Suozzi, 517 F.3d 124, 127 (2d Cir. 2008) (internal quotations omitted).  "[A]s the Supreme Court has long made clear, '[t]o have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'"  Modzelewski v. Baker, No. 3:10cv390 (MRK), 2011 WL 8831461, *3 (D. Conn. Sept. 27, 2011) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  "Further, the Supreme Court has emphasized that 'a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'"  Id. (quoting Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  "[W]hether a protected property interest exists is a legal question that the Court may decide on a Motion to Dismiss."  Huesser v. Hale, No. 3:07cv1660 (PCD), 2008 WL 2357701, *2 (D. Conn. June 5, 2008).

Maple Avenue asserts that its protected property interest in its position on the towing rotation list stems from the Wrecker Policy and Procedures followed by the North

6

haven Police Department.  See Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Memo. Opp. Mot. Dismiss") (Doc. No. 23) at 5 ("[T]he Wrecker Policy, which are regulations concerning the towing of vehicles, governs the towing rotation list in the Town of North Haven.  The authority to create the list, and these regulations which govern the application and mandate that referrals be made on an equal basis stem from the aforementioned North Haven Ordinance and the Wrecker Policy.  Therefore . . . Plaintiff here can point to a regulator scheme that creates a protected property interest.").

Because the Wrecker Policy and the town ordinance governing the towing rotation list are integral to the complaint, the court will examine them here.  Under section 151-6 of the ordinances of the Town of North Haven:

> Whenever any vehicle shall be found parked in any space on any public street or highway overtime, beyond the period of legal parking time established for such place by the Traffic Authority or shall be found parked therein during any period when parking is prohibited or shall be found parked in violation of any of the provisions or any resolution, rule or regulation of the Traffic Authority or of any provision of this chapter, such vehicle may be removed or conveyed by or under the direction of a member of the Department of Police Services in accordance with the regulations concerning the towing of vehicles in the Town of North Haven as adopted by the Traffic Authority.

North Haven, Conn., Ordinances § 151-6.  Presumably pursuant to this Ordinance, North Haven established its Wrecker Policy.  That relevant portion of that policy begins with a statement that, "The Police Chief will have ultimate authority and power of approval over all aspects of this policy, including the make-up of the rotation list, deletions, and additions," and continues:

7

> When the Chief of Police finds evidence of violations of this policy by wrecker operators or their agents, or of conduct contrary to the best interest of the Town or the Department, that towing service may be suspended from the rotation list for a period of time, which the Chief of Police deems appropriate. The Chief of Police also reserves the right to remove a wrecker operator from the rotation list.

See Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Memo. Supp. Mot. Dismiss") (Doc. No. 12-1) at Ex. A at 7. According to Maple Avenue, "Pursuant to this policy, the Chief of Police must file 'evidence of violations' or of conduct contrary to the 'best interest of the Town or department' in order to exercise his right to remove a wrecker operator from the rotation list. The rules governing the removal of a wrecker operator from the list establish a property interest, because they establish that the wrecker operator must be removed from the list only for substantive cause and limits the discretion of the Police Chief." Id. at 6-7.

The court disagrees with Maple Avenue. As a preliminary matter, Maple Avenue does not allege that it entered into any sort of contractual agreement with the town regarding the towing list. Further, while the Complaint certainly alleges that the Wrecker Policy created a property interest, it is clear from the pleadings that this allegation rests entirely on the language of the Wrecker Policy itself, which, as the court stated above, the court can consider on a Motion to Dismiss.

"The mere existence of a rotational towing list does not vest a property interest in Plaintiff [ ]." Heusser v. Hale, No. 3:07-cv-1660 (PCD), 2008 WL 2357701, *2 (D. Conn. June 5, 2008) (citing B & M Serv. Station v. City of Norwich, No. 2:91-CV-1027 (CFD), 2000 WL 305981, *5 (D. Conn. Feb. 25, 2000). A murkier question is the extent to which a municipal policy such as the Wrecker Policy can serve to create a property interest. At least one court in this circuit has observed, "the source of the authority for a

8

towing system must be state law and . . . local policy or custom is not enough to create a property interest." B & M Serv. Station, 2000 WL 305981 at *6 (citing Morley's Autobody, Inc. v. Hunter, 70 F.3d 1209 (11th Cir. 1996); Blackburn v. City of Marshall, 42 F.3d 925 (5th Cir. 1995)).

Maple Avenue does not actually cite the state law authorizing the Wrecker Policy, but it appears to be section 29-23a of the Connecticut General Statutes.  The courts that have examined this statute have found that, while it authorizes the creation and utilization of a rotational towing system, it does not dictate the guidelines by which the towing system must be operated, and does not create a protected property interest. See Huesser, 2008 WL 2357701 at *2; B & M Serv. Station, 2000 WL 305981 at *5. Section 29-23a, which provides specifically for the establishment of a rotational system for summoning wreckers -- which, again, has been found to not carry sufficient specificity to vest a property interest -- is significantly more detailed than the North Haven ordinance.

However, at least one court in this district has found a protectable property interest vested from a local ordinance supplemented by a rotational towing list policy.  In Ortiz v. Town of Stratford, the court contrasted the situation presented there with those of the other, often-cited Second Circuit cases concerning rotational towing lists.  In contrast to White Plains Towing Corp. v. Patterson, 991 F.2d 1049 (2d Cir. 1993), which involved an "indefinite, oral arrangement with state police to provide towing services on a specific portion of Interstate 287," and Geiger v. Town of Greece, No. 07-cv-6066 (CJS), 2007 WL 4232717 (W.D.N.Y. Sept. 4, 2007), which involved a contract that specifically provided that the police chief could terminate the contract at any time and

9

for any reason, the court in Ortiz found a protected property interest. The court reasoned:

> In this case, the police department issued a towing policy ("Policy") pursuant to a town ordinance authorizing the creation of a towing list. The Policy stated that all towing companies that desired to be on the list had to sign a written agreement with the town and follow the guidelines in the Policy to remain on the list. In exchange, they would be called on a rotational basis to perform nonconsensual tows within Stratford. The plaintiffs, along with other towing companies on the list, failed to sign a written agreement and therefore had an "informal arrangement" with the town with an indefinite termination date. The town acknowledges that the plaintiffs were on the approved towing list, and referred to the relationship between the plaintiffs and the town as contractual in nature. However, the Policy specifically states that the chief of police may remove or suspend towing operators from the list "for cause at any time" if a tow operator violates "any portion of this policy, State Law, or Town Ordinance, or fails to continually perform in a satisfactory manner." Here, the plaintiffs' rights were not the subject of one person's whim, because the chief of police did not have sole discretion over their removal. Thus, <u>it may be assumed that the plaintiffs had a property interest in remaining on the towing list, because they paid a yearly fee to remain on the list, the Policy provided for a 'for cause' removal only and the towing companies had a right to appeal the decision to the Mayor</u>.

Ortiz v. Town of Stratford, 3:07-CV-1144 (AHN), 2008 WL 4630527, *13 (D. Conn. Oct. 14, 2008) (emphasis added).

Maple Avenue leaves aside the issue of whether such a municipal policy can ever be enough to create a property interest in the context of a vague state statute like the one at issue here, and argues, essentially, that the Wrecker Policy creates a restriction on the Chief of Police that permits removal from the list only for what is the equivalent of "for cause." Even if the court did agree that a municipal policy could establish such a protected property interest – something the court need not decide here -- Maple Avenue's argument fails because the Wrecker Policy itself does not create such a property interest. The court looks to the language of the Wrecker Policy itself, which provides for suspension from the towing list, "When the Chief of Police finds

evidence of violations of this policy by wrecker operators or their agents, <u>or of conduct contrary to the best interest of the Town or the Department</u>." Defs.' Memo. Supp. Mot. Dismiss at Ex. A at 7 (emphasis added).  It is plain that such language provides very substantial discretion on the part of the Chief of Police to act.  While perhaps slightly more circumscribed than a mere "whim," it is far from the kind of restriction that creates a protected property interest.  While the exact meaning of the term "in the best interests of" will of course vary depending on the context of the policy at issue, other courts examining similar language have found that it admits substantial enough discretion to prevent a claim that a protected property interest exists.  <u>See</u> <u>Cybulski v. Cooper</u>, 891 F.Supp. 68, 70 (D. Conn. 1995) ("The Guidelines and Application for Moonlighting notified Plaintiff that a moonlighting job was 'secondary' and could be revoked if found to be 'contrary to the best interest of the Enfield Police Department.'  Plaintiff's primary employment as a police officer including benefits is unaffected.  As a temporary and conditional source of supplemental income, plaintiff had no absolute nor assured right to the moonlighting."); <u>Impact Shipping, Inc. v. City of New York</u>, No. 95 Civ. 2428 (JGK), 1997 WL 297039, *6 (S.D.N.Y. June 3, 1997) ("Here, the plaintiff has no protected property interest in the alleged contract.  Any such contract would be terminable at will and subject to significant discretion on the part of the city.  Under the bid terms, '[t]he City reserve[d] the right to terminate or cancel this contract on written notice when deemed in the best interest of the City to do so.'"); <u>see</u> <u>also</u> <u>Fittshur v. Village of Menomonee Falls</u>, 31 F.3d 1401 (7th Cir. 1994) ("The rule that a hospital board may dismiss an officer 'whenever in [the board's] judgment the best interests of the hospital would be served' does not create a property interest because it places but a nominal

limitation on the board's discretion to discharge an officer. Similarly, the rule here that a village manager may discharge an employee of the Village 'when necessary for the good of the Village service' does not restrict the village manager's discretion in any meaningful way. Explicit mandatory language which would limit the village manager's authority to discharge Fittshur, or any other employee of the Village, is lacking. Under the ordinance, the village manager defines, without prescribed guidelines, the permissible scope of his own discretion. Almost any discharge of a Village employee can be defended as 'necessary for the good of the Village service.'") (internal citations and punctuation marks omitted); Warren v. Crawford, 927 F.2d 559, 562 (11th Cir. 1991) (language providing that county administrator could dismiss department head "'when, in his judgment, it is in the best interests of the County,'" created an at-will employment standard and foreclosed department head from having a property interest in his job)." It is clear from the face of the Wrecker Policy alone that the Chief of Police's discretion to alter the towing rotation list is not limited in any meaningful way, and Maple Avenue can therefore assert no property interest based on its removal from that list. Accordingly, the court dismisses Maple Avenue's due process claim because it possessed no protected property interest.

    B. <u>Federal Preemption</u>

The court next turns to Maple Avenue's federal preemption claim. Maple Avenue argues, "Plaintiff claims that the North Haven Police Department's review of the Plaintiff's invoices for overcharging on recovery effect [sic] exceeded the scope of review authorized to state and local governments. The federal government has preempted the regulation of additional services incident to the tow of the vehicle, which

is exclusive to the simple hooking up of the vehicle for transport." Pl.'s Memo. Opp. Mot. Dismiss at 11. Essentially, Maple Avenue argues that the ostensible reasons behind its removal from the rotational tow list -- overcharging for services -- are impermissible ones for the defendants because the defendants are preempted from regulating the price of services that are not directly related to nonconsensual towing services provided by a tow truck. Maple Avenue bases this rather novel argument on section 14501(c)(1) of the Federal Aviation Administration Authorization Act ("FAAAA"), which provides:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). This rule, however, contains three exceptions, including section 14501(c)(2)(c), which states that this rule, "does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U.S.C. § 14501(c)(2)(c); see also, Loyal Tire & Auto Center, Inc. v. Town of Woodbury, 445 F.3d 136,142 (2d Cir. 2006) (explaining background of statute).

Unfortunately, Maple Avenue did not see fit to provide any citations to any cases, even solely for background purposes, in support of its argument (and Defendants fare little better, citing a single case that merely quotes the statute). Notably, Maple Avenue is not arguing that the towing rotation list itself is, in some way, preempted because it

13

falls outside the section 14501(c)(2)(c) exception.  Indeed, quite the opposite.  Maple Avenue wants little more than to return to the list; it is, instead, the <u>reason</u> for its ejection from the list that it deems preempted.

In its Complaint, Maple Avenue asserts, "Defendants are federally preempted from regulating the charge for services not performed by a tow truck.  As stated in the interoffice memorandum accompanying the letter dated September 13, 2012, <u>Defendants sought to remove Plaintiff from the towing rotation in North Haven on the basis of overcharging for services which were not performed by a tow truck</u>."  Compl. at ¶ 12 (emphasis added).  Courts have on occasion considered whether state law provisions regulating tow truck services that do not, at least on first glance, directly relate to the price of nonconsensual tows are indeed preempted by the FAAAA.  <u>See</u>, e.g., <u>Independent Towers of Washington v. Washington</u>, 350 F.3d 925, 931 (9th Cir. 2003) ("[A section of Washington state law] requires operators to file 'fee schedules' with the department and forbids them from charging more than the listed rates.  This section also sets forth procedures for how fees must be calculated.  Because this provision directly regulates the amount a tow operator can recover for its services, it 'relat[es] to the price of for-hire motor vehicle transportation by a tow truck' and therefore is not preempted under 49 U.S.C. § 14501(c)(2)(c).") (quoting 49 U.S.C. § 14501(c)(2)(c).

The court notes that the FAAAA states that, "a State, political subdivision of a State, or political authority of 2 or more states may not<u> enact or enforce a law, regulation, or other provision having the force and effect of law</u>."  49 U.S.C. § 14501(c)(1) (emphasis added).  This the Defendants plainly did not do.  The Complaint

alleges merely that Maple Avenue was removed from the towing "on the basis of overcharging for services which were not performed by a tow truck." This allegation is simply insufficient to state a claim that the defendants were enacting or enforcing a law or regulation concerning the price of either consensual towing or nonconsensual services performed by a vehicle other than a tow truck because the allegation merely asserts a proprietary decision on the part of the defendants, not a general pricing policy. See Dumas Towing, LLC v. DeArmond, No 2:11-CV-121-J, 2012 WL 620332, *3 (N.D. Tex. Feb. 24, 2012) ("Defendant's decision to remove Plaintiff from the towing list -- to ensure safe towing with minimal problems -- is a proprietary decision. Defendant maintained a non-consent towing list to ensure non-consent tows were effectively and safely dealt with following an accident. After working with the Plaintiff, the Defendant determined Plaintiff was not effectively carrying out its task. Defendant's concerns are similar to those a private company would have when determining with whom to do business. Furthermore, Plaintiff does not present evidence that Defendant was attempting to promote a general policy with his decision to remove Plaintiff. Defendant claims that he removed Plaintiff after receiving complaints from both his employees and private individuals regarding Plaintiff's service, and that Plaintiff spoke dishonestly to him. These reasons defeat the inference that Defendant was attempting to promote a general policy with his decision to remove the Plaintiff. Accordingly, Defendant's actions are not preempted by 49 U.S.C. § 14501."); see also Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex., 180 F.3d 686, 697 (5th Cir. 1999) (finding that a requirement for entry for consideration to a city towing rotation list relating to response times was not preempted because, in part, "[T]he party requesting the tow is undeniable

also acting as a consumer, and when the City requests a tow it should be treated as a consumer. We are convinced the City's role here is of a proprietary nature, notwithstanding the fact that a third party pays for the service. For all the reasons stated, we hold that the City's actions did not constitute regulation or have the force and effect of law."); Midwest Towing & Recovery, Inc. v. City of Lancaster, No. 2:09-cv-1142, 2011 WL 249467, *6 (N.D. Ohio Jan. 26, 2011) ("The contractual relationships between the City and the towing companies participating in the towing rotation list serve to further the municipality's function of controlling and ensuring the safety of its roadways. And these towing services must be performed pursuant to the City's agreement with the towing company. The guidelines of the City's towing rotation policy, implemented via the towing service rotation agreements, however, does not have the force and effect of law with general applicability, and only governs conduct performed at the direction of the City. Thus, the City has not regulated the conduct of towing companies within the municipality, as would be prohibited by the pertinent federal and state statutes. Accordingly, Plaintiff's preemption claim is without merit."). Because the Defendants' actions, as alleged in the Complaint, do not have the force and effect of law, its actions are not preempted, and Maple Avenue has failed to state a claim as to this count.

## V.   CONCLUSION

For the foregoing reasons, the court **grants** Defendants' Motion to Dismiss (Doc. No 12) in its entirety.[5] Because no substantive claims remain, the court also dismisses Maple Avenue's claim for Preliminary Injunction as asserted in its Complaint and in its Motion for Preliminary Injunction (Doc. No. 6). The Clerk is directed to **terminate as**

---

[5] As noted earlier, Maple Avenue has abandoned its equal protection claim.

**moot** the Motion for Preliminary Injunction. While a Due Process claim based solely on the language of the Wrecker Policy is likely futile, Maple Avenue has until February 28, 2013 to file an Amended Complaint.

**SO ORDERED.**

    Dated at New Haven, Connecticut this 13th day of February, 2013.


                                                                     /s/ Janet C. Hall
                                                                Janet C. Hall
                                                                United States District Judge