UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MAPLE AVENUE REPAIR SERVICE, LLC, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-1689 (JCH) |
| v. | : | |
| | : | |
| TOWN OF NORTH HAVEN, NORTH HAVEN POLICE DEPARTMENT, THOMAS MCLOUGHLIN, MARK GENOVESE, and LOUIS PETRILLO, | : | MAY 7, 2013 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 31)**

**I.     INTRODUCTION**

On March 1, 2013, plaintiff Maple Avenue Repair Service, LLC ("Maple Avenue"), a licensed towing company, filed a Revised Amended Complaint ("Rev. Am. Compl.") (Doc. No. 30).  The Revised Amended Complaint seeks a permanent injunction and alleges (1) violations of Maple' Avenue's constitutional rights to due process pursuant to section 1983 of title 42 of the United States Code, (2) action beyond the Defendants' regulatory authority due to federal preemption, and (3) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), sections 42-110a to 42-110q of title 42 of the Connecticut General Statutes, all stemming from the removal of Maple Avenue from the Town of North Haven's towing rotation list.  The Revised Amended Complaint names as defendants the Town of North Haven, North Haven Police Department, Thomas McLoughlin, Mark Genovese, and Louis Petrillo.  The Revised Amended Complaint followed this court's Ruling ("Ruling Mot. Dismiss") (Doc. No. 28), which granted the

1

prior Motion to Dismiss the original Complaint, which alleged similar violations.[1] The court permitted Maple Avenue to file an Amended Complaint. The defendants have again filed a Motion to Dismiss all claims pending against them ("Mot. Dismiss. Rev. Am. Compl.") (Doc. No. 31).

For the following reasons, the court **grants** Defendants' Motion to Dismiss the Revised Amended Complaint in its entirety.

## II.     STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show he is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'"). The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability

---

[1] The court also held a hearing (Doc. No. 22) on Maple Avenue's Motion for Preliminary Injunction (Doc. No. 6) on January 9, 2013.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). The plausibility standard does not "require[ ] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal Court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 662 F.3d 104, 111 (2d Cir. 2010) (citations

3

omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id. (quotations and citations omitted).

### III.   FACTUAL BACKGROUND[2]

Maple Avenue (which does business under the name Nelcon Service Center), is a licensed towing company in Connecticut. The Town of North Haven is an unincorporated town in Connecticut, and the North Haven Police Department is a department of that town. Chief of Police Thomas McLoughlin, Captain Mark Genovese, and Officer Louis Petrillo are police officers of the Town of North Haven.

Prior to October 25, 2012, Maple Avenue was a member of the "towing rotation board" of the Town of North Haven. Rev. Am. Compl. at ¶ 5. As a member of the towing rotation board, Maple Avenue was placed on the towing rotation list of the Town of North Haven, which list is comprised of companies called by the North Haven Police Department for nonconsensual tows. The towing rotation board is governed by the Wrecker Policy and Procedures followed by the North Haven Police Department ("Wrecker Policy"). Rev. Am. Compl. at ¶ 6.

In a letter from McLoughlin dated September 13, 2012, Maple Avenue was informed that an audit had been conducted by Genovese and Petrillo of the police department's Traffic Division and that the officers reported that Maple Avenue had towing invoices that appeared to be excessive. The letter also advised Maple Avenue

---

[2] The court assumes as true the facts in Maple Avenue's Revised Amended Complaint for purposes of this Motion to Dismiss. The facts as alleged in the Revised Amended Complaint largely track those alleged in the original Complaint.

that it would have an "opportunity to explain any questionable charges" in a meeting to be held on October 15, 2012. Rev. Am. Compl. at ¶ 8. This meeting was not on the record, and no rules or standards applied. Enclosed with the letter was an Interoffice Memorandum outlining the specific invoices examined by the officers and the officers' review of them.

No customer or insurance company filed a complaint with the State of Connecticut Department of Motor Vehicles regarding overcharges. The Department of Motor Vehicles did not make a finding of overcharging on any of the invoices reviewed by Genovese and Petrillo.

At the October 15, 2012 meeting, McLoughlin and Genovese were present, along with three inspectors from the Department of Motor Vehicles.[3] Maple Avenue submitted a memorandum outlining the justification for each service listed on every invoice. On October 24, 2012, Maple Avenue's counsel received correspondence from McLoughlin stating that Maple Avenue had been removed from the towing rotation board effective October 25, 2012.

Maple Avenue asserts that the North Haven Police Department, as demonstrated by an acknowledgement by McLoughlin, had previously offered hearings to towers prior to or shortly after suspension or removal of those towers from the tow rotation list. Maple Avenue further asserts that the long term relationship sustained for five years between Maple Avenue and the North Haven Police Department established a course of dealing in which there were "mutually explicit understandings" that a hearing would

---

[3] The court assumes the inspectors are from the Department of Motor Vehicles based on the context of the Complaint. The Complaint simply states that the inspectors are from the "Department." Rev. Am. Compl. at ¶ 10.

be held prior to or shortly after suspension or removal from the tow rotation list. Maple Avenue asserts that it was not given proper notice of a hearing or an opportunity for a hearing because of the nature of the October 15, 2012 meeting.

Maple Avenue further asserts that Maple Avenue's reputation has been injured by the actions of Defendants, and that this reputational damage has limited Maple Avenue's ability to provide towing and repair services in the Town of North Haven, and has "triggered unjustified inquiries into [Maple Avenue]'s business practices jeopardizing [Maple Avenue]'s status on other tow rotation lists." Rev. Am. Compl. at Third Count, ¶ 16.[4]

Maple Avenue asserts both that, "Defendants did not act in its [sic] own interests in its [sic] efficient procurement of needed goods and services but to provide a public service and enact a general policy for the regulation of the towers of the Town of North Haven" and that, "Defendants' decision to remove [Maple Avenue] from the tow rotation list was a proprietary decision, in which the Defendants acted as market participants by acting in their own interests for the efficient procurement of needed services and in addressing a specific proprietary problem as a private company would in similar circumstances." "Rev. Am. Compl. at Fourth Count, ¶ 15 (internal quotation omitted), Fifth Count, ¶ 13.

## IV.   DISCUSSION

### A. Due Process Claims

The court first turns to Maple Avenue's Due Process claims. Maple Avenue alleges that because it was not provided a proper hearing or notice for a hearing before

---

[4] The court notes that the numbering system of the Revised Amended Complaint is somewhat confusing.

being removed from the towing rotation list, it was deprived of both a constitutionally protected property interest in placement on the towing rotation list and a constitutionally protected liberty interest in "follow[ing] its chosen profession of nonconsensual towing free from unreasonable government interference." Rev. Am. Compl. at Third Count, ¶ 13.  In evaluating a procedural due process claim, courts "analyze (1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." Adams v. Suozzi, 517 F.3d 124, 127 (2d Cir. 2008) (internal quotations omitted).

1. Property Interest

The court previously held that the Wrecker Policy that governed the towing rotation list did not create a protected property interest for Maple Avenue because, inter alia, the Wrecker Policy did not limit the discretion in any meaningful way of the Chief of Police to alter the towing rotation list.  See Ruling Mot. Dismiss at 6-12.  In its Revised Amended Complaint, Maple Avenue asserts that its protected property interest does not stem from the Wrecker Policy but, instead, from "mutually explicit understandings" between Maple Avenue and the North Haven Police Department concerning the expected method of handling suspensions and removals from the towing rotation list. See Rev. Am. Compl. at Second Count, ¶ 13; Plaintiff's Memorandum in Opposition to Motion to Dismiss Revised Amended Complaint ("Pl.'s Memo. Opp. Mot. Dismiss Rev. Am. Compl.") (Doc. No. 32) at 3-4.

"To state a claim for deprivation of property without due process of law, a plaintiff must identify a property interest protected by the Due Process Clause." Harrington v. County of Suffolk, 607 F.3d 31, 34 (2d Cir. 2010).  "[A]s the Supreme Court has long

made clear, '[t]o have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" Modzelewski v. Baker, No. 3:10cv390 (MRK), 2011 WL 8831461, *3 (D. Conn. Sept. 27, 2011) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). "Further, the Supreme Court has emphasized that 'a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" Id. (quoting Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)). "Such entitlements are not created by the Constitution but, '[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Harrington, 607 F.3d at 34 (quoting Castle Rock, 545 U.S. at 756). "Although the substantive interest derives from an independent source such as state law, 'federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'" Harrington, 607 F.3d at 34 (quoting Castle Rock, 545 U.S. at 757) (emphasis in original). "[W]hether a protected property interest exists is a legal question that the Court may decide on a Motion to Dismiss." Huesser v. Hale, No. 3:07cv1660 (PCD), 2008 WL 2357701, *2 (D. Conn. June 5, 2008).

Courts have had occasion to address the issue of whether placement on a municipal towing rotation list creates a protected property interest, and the court notes, "The mere existence of a rotational towing list does not vest a property interest in Plaintiff [ ]." Heusser, 2008 WL 2357701 at *2 (D. Conn. June 5, 2008) (citing B & M Serv. Station v. City of Norwich, No. 2:91-CV-1027 (CFD), 2000 WL 305981, *5 (D. Conn. Feb. 25, 2000)).

Maple Avenue bases its argument that it had a protected property interest on the assertion in its Revised Amended Complaint that "mutually explicit understandings" existed "that a hearing would be held prior to or shortly after suspension or removal from the tow rotation list." Rev. Am. Compl. at Second Count, ¶ 15; Pl.'s Memo. Opp. Mot. Dismiss Rev. Am. Compl. at 4 ("The Defendants [sic] prior actions and course of dealing established a mutually explicit understanding that the Plaintiff had an entitlement to its placement on the tow rotation list, so that Plaintiff would have the proper opportunity to defend itself prior to suspension or removal from the tow rotation list."). Maple Avenue cites as support a quotation from Roth: "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." Roth, 408 U.S. at 577. Maple Avenue interprets this quote to mean that property interests can arise from a source other than state law (important here because Maple Avenue's state-law-based claim has been dismissed), namely, the "policies and practices" of the North Haven Police Department that are understood, if not codified officially. See Perry v. Sindermann, 408 U.S. 593, 601 (1972) ("[P]roperty interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, property denotes a broad range of interests that are secured by existing rules or understandings. A person's interest in a benefit is a property interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke a hearing.") (internal quotations and citations omitted); see also McMenemy v. City of Rochester, 241 F.3d 279, 287 (2d Cir. 2001)

9

(considering whether a protected property interest was created by mutually explicit understandings).

According to Maple Avenue, defendants' prior extension of pre- or post-suspension hearings to other towing companies on the towing rotation list, as well as an understanding that such a procedure would take place in Maple Avenue's case, are sufficient to allege a constitutionally protected property interest.

The court notes, as a preliminary matter, that to the extent that Maple Avenue asserts that its property interest stems from its placement on the towing rotation list in and of itself, this argument was discussed and dismissed in the court's prior Ruling. See Ruling Mot. Dismiss at 6-12. Maple Avenue has made no new allegations, or raised additional arguments, that would disturb this finding.

Turning to the issue of whether any "mutually explicit understandings" are alleged that could create such a property interest, the court further observes, as a threshold matter, that it is not entirely clear how, or in what way, a promise of a pre- or post-suspension hearing relates to whether or not Maple Avenue had a protected property interest in placement on the towing rotation list. Indeed, the only factual allegations regarding the supposed promises relate to whether a hearing would be held either before or after suspension. Not only does this allegation suggest that Maple Avenue understood that it could be removed from the list without a pre-deprivation hearing, but it does not in any way suggest the nature of such a hearing, or whether it would function as some sort of appeals process. More to the point, the allegations are not related to whether Maple Avenue received some sort of promise regarding its placement on the towing rotation list, but, rather, whether or not it would receive a hearing. Maple Avenue

appears to confuse the nature of a protected property interest, with the ancillary procedures associated with that interest. See, e.g., McMenemy, 241 F.3d at 287 ("But because McMenemy had no legitimate claim of entitlement to -- and therefore no property interest in -- the position to which he aspired, the procedures used to fill that job are immaterial to his due process claim. The fact that New York has mandated certain procedures does 'not of itself create a property or liberty right.'") (quoting Schwartz v. Mayor's Committee on the Judiciary, 816 F.2d 54, 57 (2d Cir. 1987) (holding that procedures requiring notice and opportunity to be heard with respect to a decision on whether to reappoint a family court judge did not create a property or liberty interest where there was no underlying property or liberty interest in the job).

As stated above, this court has previously ruled that the nature of the towing rotation list, or the statutes and regulations that govern it, do not create an independent property interest in placement on the towing rotation list. See Ruling Mot. Dismiss at 6-12. The court held that the statutes and the regulations at issue did not restrict the Chief of Police's discretion to remove or place companies on the towing rotation list "in any meaningful way." Id. at 12. As a result, there is no protected property interest to begin with, so the possibility of additional procedures is not of particular relevance. The "mutually explicit understandings" are not alleged to have entailed a promise to placement or continued placement on the towing rotation list.

By comparison, some of the cases that have found a protected property interest based on mutually explicit understandings have done so on the basis of allegations relating to the promise of the underlying benefit itself -- not to procedures -- and are far more specific and comprehensive than those alleged here, and usually involve promises

or statements made individually to the party claiming that property interest, as opposed to vague statements of a general policy. See Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 783 (2d Cir 1991) (finding an individual had a protected property interest in the position of Chief Resident because the corporation that denied the job had adopted a policy and practice of awarding the position to all third year residents on a rotating basis, highlighted that practice in informational documents, and verbally advised the plaintiff that she would be Chief Resident for a specified period of time, creating a "contractual right that rose to the level of a significant property interest that would be protected under state law); Tilghman v. Bd. of Educ. of City of West Haven, No. 3:08CV0982(AWT), 2009 WL 1544137 (D. Conn. June 3, 2009) (holding that the plaintiff had alleged sufficient facts to survive a motion to dismiss based on her claim that she was denied a protected property interest in appointment to an applied-for job because she alleged that the board of education maintained a practice of promoting individuals who are the sole applicants for posted vacancies, and the plaintiff's immediate supervisor informed her that she had been selected for the position); Malla v. University of Connecticut, 312 F.Supp.2d 305, 332 (D. Conn. 2004) (finding a protected property interest in a position where the denied job seeker had already occupied the position for nine years, a grant application signed by the university president named the plaintiff as the holder of the position, a letter from the Dean of Engineering explicitly affirmed the same, the plaintiff testified to a pattern and practice of awarding positions, and special importance in the academic community existed as to the type of position in question).

Here, the mutually explicit understandings that are alleged to create the protected property interest are based solely on the allegation that the North Haven Police Department has previously offered "hearings" to towers "prior to or shortly after suspension or removal from the tow rotation list" and a "long term relationship sustained for over five years" between Maple Avenue and the North Haven Police Department that a "hearing" would be held prior to or shortly after suspension or removal from the towing rotation list.  Rev. Am. Compl. at ¶ 14-15.  These allegations, accepted as true, are simply insufficient to create a protected property interest in placement or retention on the towing rotation list.  They relate solely to generalized procedures, and not to an entitlement to placement on the list itself and they are not sufficiently specific to suggest the kind of substantive appellate-type hearings Maple Avenue later suggests in argument.  Further, they undercut an argument that Maple Avenue was entitled to the interest because they clearly contemplate as acceptable deprivation of the interest without pre-deprivation hearings.  Moreover, finding a protected property interest from such "mutually explicit understandings" would create an entitlement to a situation that the court has determined is already governed by state statute and local regulation that permit wide discretion of the type that would normally prevent the finding of such a property interest.  Indeed, "mutual understandings and customs could not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes."  Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980).  Maple Avenue has not cited any relevant authority (or any authority at all) that would argue for a different conclusion.

13

Because Maple Avenue has failed to allege facts sufficient to demonstrate a protected property interest, its procedural due process property interest claim fails. The court therefore grants the defendants' Motion to Dismiss Count Two.

### 2. Liberty Interest

The court next turns to Maple Avenue's claim that the defendants' actions deprived Maple Avenue of a constitutionally-protected liberty interest under the Due Process Clause based in large part on reputational damage to Maple Avenue's business. Maple Avenue argues that it has alleged facts sufficient to state a claim that defendants deprived Maple Avenue of a liberty interest in pursuing its chosen profession by limiting the business options available to it without due process.

"Constitutionally protected liberty interests include the freedom from bodily restraint, the right of an individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home and bring up children, to worship freely, and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness." B&M Service Station v. City of Norwich, No. 2:91CV1027(CFD), 3:93CV1782(CFD), 2000 WL 305981, *6 (D. Conn. Feb. 25, 2000).

One means in which a liberty interest may arise is, in a manner similar to a property interest, if the state regulation in question "employs 'language of an unmistakably mandatory character, requiring that certain procedures shall, will, or must.'" Id. at *6 (quoting Russell v. Coughlin, 910 F.2d 75, 77 (2d Cir. 1990)). As discussed in this court's prior Ruling, such statutory language is notably absent here. See Ruling Mot. Dismiss at 6-12.

However, another route to a liberty interest exists.  The Second Circuit has recognized "that loss of one's reputation can invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment."  Guerra v. Jones, 421 Fed.Appx. 15, 18 (2d Cir. 2011) (internal quotations and punctuation marks omitted).  Such claims are typically referred to as "stigma-plus" claims.  "To prevail on such a claim, [plaintiff] must prove (1) the utterance of a statement that is injurious to reputation, that is capable of being proved false, and that [plaintiff] claim[s] is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement."  Monserrate v. New York State Senate, 599 F.3d 148, 158 (2d Cir. 2010).  Moreover, "a plaintiff must prove these stigmatizing statements were made public."  Guerra, 421 Fed.Appx. at 18; see also White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1063 (2d Cir. 1993).

As a threshold matter, there is no allegation in the Revised Amended Complaint concerning the allegedly false or stigmatizing nature of any statement made by the defendants.  Indeed, there is no allegation that defendants said anything about Maple Avenue at all, other than to remove them from the towing rotation list.  Moreover, there is no allegation that such a statement, to the extent that it was made by implication from the fact that Maple Avenue was removed from the towing rotation list, was published or disseminated to the public.  "Recovery is limited to those instances where the stigmatizing charges made in the course of discharge have been or are likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities."  White Plains Towing, 991 F.2d at 1063.  Here, Maple Avenue has alleged, "The actions of the Defendants have triggered

unjustified inquiries into Plaintiff's business practices jeopardizing the Plaintiff's status on other tow rotation lists." Rev. Am. Compl. at Third Count, ¶ 16. Even a liberal reading of such an allegation falls short of the pleading requirements necessary to state a due process claim based on a deprivation of a liberty interest because they do not assert publication or wide dissemination of statements relating to Maple Avenue at all, much less stigmatizing and potentially false statements. According, the court grants Defendants' Motion to Dismiss as to Count Three.

### B. Federal Preemption

Maple Avenue also raises the issue of federal preemption, discussed at length and dismissed in the court's prior Ruling. See Ruling Mot. Dismiss at 12-16. To its earlier allegations, Maple Avenue merely adds the conclusory allegation that, "Defendant did not act in its 'own interests in its efficient procurement of needed goods and services' but to provide a public service and enact a general policy for the regulation of the towers of the Town of North Haven." Rev. Am. Compl. Fourth Count, ¶ 15. Maple Avenue has alleged no facts in support of this conclusion, and it in no way disturbs the court's earlier Ruling.

Next, Maple Avenue introduces a new aspect of its federal preemption claim. It now alleges that the Wrecker Policy, and defendants' enforcement of it, was not responsive to safety concerns, but was, instead, intended to compel conformity "with the state regulations regarding pricing" and is preempted by 49 U.S.C. § 14501(c)(1). Pl.'s Memo. Opp. Mot. Dismiss Rev. Am. Compl. at 8.

As the court noted in its earlier Ruling, the Federal Aviation Administration Authorization Act ("FAAAA") generally preempts state and local laws "related to a price,

route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1). It is undisputed that tow truck firms are "motor carriers." See, e.g., California Tow Truck Ass'n v. City and County of San Francisco, 692 F.3d 847, 857 (9th Cir. 2012).

This rule, however, contains three exceptions, one of which provides that the FAAAA "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(a). Though the FAAAA refers only to the regulatory authority of a "State," the exception has been found to extend to municipal ordinances as well. See City of Columbus v. Ours Garage & Wrecker Service, 536 U.S. 424, 428 (2002). "Ours Garage examined the safety exception's purpose, which was 'to ensure that [the FAAAA's] preemption of States' economic authority over motor carriers of property . . . 'not restrict' the preexisting and traditional state police power over safety.'" California Tow Truck Ass'n, 692 F.3d at 859 (9th Cir. 2012); see also Loyal Tire & Auto Center, Inc v. Town of Woodbury, 445 F.3d 136, 145 (2d Cir. 2006). The Second Circuit has explained how courts are to test whether a particular municipal policy falls under the safety exemption. "[W]e no longer consider simply whether a regulation is reasonably related to safety but must determine whether, in light of the legislative body's purpose and intent, the regulation is genuinely responsive to safety concerns." Loyal Tire & Auto Center, 445 F.3d at 145 (internal quotation omitted).

The defendants argue, simply, that the Wrecker Policy at issue here was plainly enacted according to North Haven's safety regulatory authority and is therefore exempt from federal preemption: thus, this claim should also be dismissed. See Defendants' Memorandum In Support of Motion to Dismiss Revised Amended Complaint ("Defs.' Memo. Supp. Mot. Dismiss Rev. Am. Compl.") (Doc. No. 31-1) at 22. Maple Avenue

17

argues that, "Defendants used the tow rotation list and the rules established by the Wrecker Policy to compel compliance with state regulation concerning rates charged for nonconsensual tows" and that, because enforcement concerning towing rates are unrelated to safety concerns, the Wrecker Policy and North Haven's enforcement of it are preempted.  Pl.'s Memo. Opp. Mot. Dismiss Rev. Am. Compl. at 9.  It is not entirely clear which aspects of the Wrecker Policy, if any, with which Maple Avenue takes issue. It cites no authority in support of its argument other than to state the general standards under Ours Garage, and does not even cite the Wrecker Policy itself.  It appears that Maple Avenue objects to its removal from the towing rotation list based upon a potential reason of overcharging for its "towing services."  Rev. Am. Compl. at ¶ First Count, ¶ 7.

      As noted above and in the court's prior Ruling, Maple Avenue has not alleged facts that the removal of Maple Avenue was a kind of "regulation" or general policy that had the force or effect of law.  As a result, the safety regulation exemption issue is simply inapplicable.  See, e.g., Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Texas, 180 F.3d 686, 697 (5th Cir. 1999).  Moreover, there is little doubt that the state statutes providing authority for the Wrecker Policy were enacted pursuant to the state's safety regulatory authority.  See, e.g., Conn. Gen. Stat. § 14-150 (relating to the removal of abandoned or unregistered motor vehicles and motor vehicles which are a menace to traffic).  The same holds for the Wrecker Policy.  See North Haven, Conn., Ordinances § 151-6.  The only conceivable argument for Maple Avenue is that the provision of the Wrecker Policy permitting removal from the towing rotation list by the Chief of Policy for "conduct contrary to the best interest of the town" is too vague to be ostensibly related to safety concerns.  Maple Avenue does not make this argument, nor

does it seem a plausible reading to regard this provision as a form of general regulatory policy.  Indeed, as the court has already reasoned, the defendants' actions here are not sufficiently alleged to take the form of a general policy, much less a general policy inappropriately setting pricing rates in preempted towing categories.[5]  Accordingly, the court grants defendants' Motion to Dismiss the federal preemption count.

### C.  CUTPA

Lastly, Maple Avenue alleges a claim pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA), Conn. Gen. Stat. § 42-110a et seq.  However, because the court has dismissed all pending federal claims, the court declines to exercise pendant jurisdiction over the state CUTPA claim.

## V.   CONCLUSION

For the foregoing reasons, the court grants defendants' Motion to Dismiss the Revised Amended Complaint (Doc. No. 31).  These claims, with the exception of the CUTPA claim over which the court has declined jurisdiction, are dismissed with prejudice.

---

[5] Additionally, the court notes that, even if what the town did here could be construed as inappropriately setting and enforcing rates, Maple Avenue's Revised Amended Complaint appears to assert that the town did so with respect to nonconsensual tows.  It refers solely to "towing services" in the context of the towing rotation list, which relates solely to nonconsensual tows. However, the third exception to the FAAA's preemption provisions specifically relates to policies related to the price of nonconsensual tows.  See 49 U.S.C. § 14501(c)(2)(c).

Further, to the extent that Maple Avenue argues that 49 U.S.C. 14501(c)(2)(c) is inapplicable because the rates questioned were not those performed by a "tow truck" specifically, it has alleged no facts that would provide a basis for such an inference.  "Towing services" seems to quite clearly implicate actions taken by a "tow truck" in the conventional sense of the term.  As tow trucks are inanimate objects, a rule limiting the implication of the term to those actions a tow truck performs on its own would be limited to being the subject of rusting and value depreciation.  The statute is not so constrained.

**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of May, 2013.

          /s/ Janet C. Hall        
Janet C. Hall
United States District Judge